## WOODS *vs.* GASSETT.

A party to a cause is a competent witness to prove the loss or destruction of an original paper, in order to the introduction of secondary evidence of the contents of the paper.

Proof of that character is addressed to the court; and being given upon a question merely collateral, and not involving the matter in issue, in the action, is not regarded as evidence in the cause, and its introduction is, therefore, not prohibited, by the well settled general rule of law that no man shall be a witness in his own cause.

The affidavit of the party is a mode proper to be adopted for the introduction of the evidence of the party to a cause, of the loss of an original paper, and upon other collateral questions.

If a note, or other writing, the loss of which is the subject of enquiry, be traced into the possession of a third person, that person, it would seem, if alive, should be called to give some account of the instrument.

The affidavit of a party, on a like question, should exclude all presumption that the party may have the note or other writing in his own possession, or knows where it is; otherwise, it will be insufficient to prove the loss.

The mere fact of the sale and delivery of a negotiable note by the payee, will not furnish even *prima facie* evidence that the note was endorsed by him.

ASSUMPSIT, upon a promissory note, dated July 19, 1834, for $36·00, payable to the plaintiff, or order, on demand, with interest. The declaration contained also a count for money had and received. The action was tried at the February term of the court of common pleas in this county, A. D. 1840. The plaintiff's counsel proposed to prove that the note declared on was lost; and for that purpose introduced the affidavit of Thomas J. Jones, the party in interest, as follows: "I, Thomas J. Jones, testify and say, that

Woods *v.* Gassett.

in the winter of 1835 I gave a note, signed by Lotan Gassett, dated July 19, 1834, for the payment of $36·00, and payable to David Woods, or order, on demand, with interest, (which I purchased of David P. Jones, he having purchased the same of said Woods,) to the said David Woods, to collect it of said Gassett. Woods drove a team at that time, but soon after, some time in the spring of 1835, and before the collection of the note, he left the state secretly, and has not been heard of to my knowledge since." The affidavit bore date February 14, 1840. The defendant objected, that this was not sufficient to entitle the plaintiff to give evidence of the contents of the note to the jury; but the court admitted the evidence.

The plaintiff then introduced the testimony of one David P. Jones, that he received from David Woods, the plaintiff on the record, in part pay for a team, a note signed by the defendant, dated about July 20, 1834, for $36·00, payable on demand, with interest. Whether Woods endorsed the note or not, he could not say—that he sold it to Thomas J. Jones, about the first of August, 1834, who paid him for it, and that he thought he, the said D. P. Jones, did not endorse it.

The plaintiff further introduced the testimony of William L. Woods, that he was a brother of David—that his brother left the state in the spring of 1835, and had not since been heard of, to his knowledge—that he had a conversation with the defendant soon after his brother went away, in which he asked the defendant if he had paid the note in question, and the defendant replied that he had not—and that about two years ago last fall he told the defendant that Jones had the note, and was going to sue it; to which the defendant said, he should pay when the note was brought forward, and not before.

A verdict was taken for the plaintiff, subject to the opinion of this court upon the foregoing case.

*Baker*, for the plaintiff.

Woods *v.* Gassett.

*Brown*, for the defendant. The affidavit of the party should not have been received as evidence of the loss of the note. It was not competent and sufficient for that purpose. Besides, every person, giving evidence in a cause, must be in court, ready to be cross-examined. Such is the rule of law, and it is not to be departed from.

Moreover, the affidavit does not prove the loss. Jones gave the note to Woods to collect, and Woods absconded; and that is all consistent with the idea that the note may have been returned, and may still remain in Jones' possession, or may have been passed to some third person, who now has the custody of it.

Gassett paid $20 on the note, in the fall after Woods took it to collect.

And the reason why the note is not produced is, that the $20 were paid; and that is the reason, also, why Jones was not in court to testify, instead of giving his testimony in the form of an affidavit.

Woods sold the note to D. P. Jones, and the legal presumption is, that Woods endorsed the note at the time of the sale; and if the note was endorsed by him, this action cannot be maintained. *Mosher* vs. *Allen,* 16 *Mass. R.* 451.

The note having been re-delivered to Woods, after the sale by him, he may have passed it to some third person, who, showing himself to be an innocent endorsee, will be able to collect the note of Gassett.

Woods, J. The proof of the loss of the note is not legally exceptionable, as being the testimony of the party in interest. The well settled distinction is, between evidence addressed to the court upon a collateral point, and evidence proper for the consideration of the jury, and of the credit and weight of which they are to judge—between evidence merely preliminary to the introduction of evidence material to the issue, and the material proofs themselves. When the evidence is addressed to the court, and is preliminary, no

doubt is entertained by us of the competency and sufficiency of the testimony of the party in interest, to furnish such evidence. It was so decided in the case of *Jackson* vs. *Frier*, 16 *Johns. Rep.* 193. And in *Forbes* vs. *Wale*, 1 *Sir W. Black. Rep.* 532, the plaintiff was examined, and gave evidence in relation to the death of the subscribing witnesses, for the purpose of laying the foundation for the introduction of secondary evidence of the execution of the bond, offered in evidence in that case by the plaintiff. In the supreme court of Pennsylvania, upon exception taken, and after argument and consideration, it was decided that the plaintiff was a good witness to prove the death of the subscribing witness to a deed, in order to let in evidence of the handwriting. *Douglass' Lessee* vs. *Sanderson*, 2 *Dallas' Rep.* 116.

Mr. Chief Justice Marshall, who delivered the judgment of the court in *Tayloe* vs. *Riggs*, (1 *Peters' Rep.* 591,) after going largely into the reasons, and reviewing extensively the authorities bearing upon the question, arrived at the conclusion of the competency and admissibility of the evidence of the party to the cause, of the loss of an original paper; the evidence being offered in order to the introduction of secondary evidence of the contents of the paper. To the same effect, substantially, is the decision in *Poignard* vs. *Smith*, 8 *Pick.* 278; *Page* vs. *Page*, 15 *Pick.* 368; and *Riggs* vs. *Tayloe*, 9 *Wheaton* 486.

The form in which the proof of the loss of the note was taken, and offered, was also made a ground of objection to the verdict, at the argument, and of claim for a new trial. It was by affidavit. And we think this is the proper mode when the evidence of the party is offered for such a purpose. The proof of the loss of a note, deed, or other written contract, is addressed to the court, and is not a subject for the consideration of the jury, or upon which they are to pass. It is introduced as auxiliary or preparatory to the trial merely, and not as determining the matter in controversy

before the jury. *Jackson* vs. *Frier*, and *Tayloe* vs. *Riggs*, *before cited.*

And it is believed to be a well established rule of practice, when testimony of this character is offered, for the court, if requested, to give it a silent perusal. And the rule has its foundation in obvious reason. The party is entitled to have his own evidence received, and considered, as we have already seen, on questions merely preliminary and collateral, and not involving the matter in controversy. If he were also entitled to give his testimony orally in open court; or if, when given in the form of affidavit, he were entitled to have it read in the presence and hearing of the jurors, it is plain that he would often, thereby, be enabled to lay before the jury his own evidence, in a cause in which he is a party. For it would not unfrequently occur, that a detailed statement of facts, such as might be necessary for the complete elucidation or establishment of the collateral question, would embrace points of evidence having a strong bearing upon the issue before the jury. But a party has no right to give direct evidence, in a cause to which he is a party. The well settled general rule of law on the subject forbids it. Has he any better right to lay his own testimony before the jury in the cause by indirection? We think not. Besides, the ground upon which the evidence of the party in such case is receivable at all, is, that it is not regarded as evidence in the cause, but only as collateral, or incidental proof, not affecting the matter in issue. *Tayloe* vs. *Riggs*, *before cited.* If it be not regarded as evidence in the cause, and for that reason alone is receivable, clearly it should not be permitted to have the effect of evidence in the cause, by influencing the verdict. In *Poignard* vs. *Smith*, 8 *Pick.* 272, it is said, that the affidavit of a party, on the question of the loss of a paper, may be admitted to exclude any presumption that he may have it in his possession, or knows where it is; while it is decided, in that case, that those who may be admitted as witnesses in the cause, must testify in

Woods *v.* Gassett.

the usual way, in order that the advantage of cross-examination may be preserved; and the *ex parte* affidavit of a competent witness was accordingly held inadmissible. The reason for rejecting the *ex parte* affidavit of a witness competent to give evidence in the cause, and holding it inadmissible, is assigned in the opinion; but the reason upon which the affidavit of the party is receivable, is not given. The ground of distinction is not stated. It, however, will readily be perceived, that the same reason does not exist for admitting the affidavit of the witnesses, competent to give evidence in chief on the trial, to prove the loss of a paper, that is seen to exist where the evidence of the party is offered for the same purpose. If, in the testimony of the witness competent to give evidence in the cause, any fact is stated which is material to the issue, even though stated in giving evidence on a collateral point, it certainly is not improper for the jury to hear it, and it may even be the right of either party that they should; while it is not proper that the verdict should be influenced by the testimony of the party himself; and, as we have seen, it is clearly not his right that it should. One of the reasons urged in argument against the form in which the evidence was offered, was, that no opportunity was afforded for cross-examination of the witness. But does that result follow? We see no objection to a cross-examination of the party, by means of written interrogatories and written answers, according to the very common practice of allowing cross-examinations upon application to the court for that purpose, in analogous cases, in which the affidavit of the party is receivable, upon questions preparatory or incidental to the trial; as, in the case of an affidavit of the materiality of a witness, of his inability to attend to give his evidence, and of the means employed to procure his attendance, and in other cases of a similar character. The truth may, and probably would, often be more perfectly elicited in that way, and justice be more certainly attained: and, we doubt not, it would be fully competent for

the court to require the presence of the party, for the purpose of cross-examination, upon the application of the adverse party, and to give written answers, to all reasonable and proper interrogations. And it is obvious, that reasons are not wanting why the party should not be subjected to a *viva voce* cross-examination, in open court, in presence of the jury. Any such requirement would virtually subject him to the necessity of giving evidence in his own cause, which, according to a well settled rule of law, he may not be compelled to do.

The introduction of the affidavit of a party, respecting collateral questions, which occur in the progress of a cause, is certainly not a novel or unprecedented proceeding, in the courts of common law, or in the courts of equity, either in England or the United States. *Morrow* vs. *Saunders*, 3 *Moore's Rep.* 671; *S. C.*, 1 *Brod. & Bing.* 318; *Page* vs. *Page*, 15 *Pick.* 368; *Forbes* vs. *Wale*, 1 *W. Black. Rep.* 532; *Jackson* vs. *Frier*, 16 *Johns. Rep.* 193; *Douglass' Lessee* vs. *Saunderson*, 2 *Dallas' Rep.* 116; *Tayloe* vs. *Riggs*, 1 *Peters' Rep.* 591; *S. C.*, 9 *Wheaton* 483. Mr. Chief Justice Marshall, in *Tayloe* vs. *Riggs*, remarks, that in courts of equity it is usual, when a bill is filed, to set up a written instrument which is lost, to annex an affidavit to the bill that the instrument is lost.

For these reasons we think the exception to the form in which the proof of the loss of the paper was offered, is not sustained.

A further exception was taken in this case, to the sufficiency of the facts set forth in the affidavit of Thomas J. Jones, to show the loss of the note, and to entitle the plaintiff to give evidence of its contents to the jury. This exception, we think, was well taken, and must prevail. The affidavit does not state such facts as show a loss, or as raise a fair and reasonable presumption of that fact. It states the delivery of the note to Woods, the payee, to collect, and that Woods drove a team at that time, and that before Woods collected the note he left the state secretly

and has not been heard of since, to the knowledge of the deponent. Now, these facts may all be true, and yet Thomas J. Jones may have the custody and possession of the note. Nothing is stated in the affidavit inconsistent with the supposition of the perfect safe keeping of the note, by the real plaintiff, Jones, or by his agent, Woods; or, with the farther supposition, that Woods, being the payee, and having the possession of the note, by re-delivery by Jones, may have sold and endorsed it to some *bona fide* purchaser for value, who can now come forward and collect it of the defendant. The evidence shows the note to have been placed in the hands of Woods, and it may be presumed still to remain in his custody, the contrary not being shown; at least, after such showing, in order to make out a reasonable case of loss, it should be made affirmatively to appear that it is not in the custody of Woods. And it is even said, in 1 *Phillips' Ev.* 456, that " if the writing in question is traced into the possession of a particular individual, who is alive, he should be called to give some account of the instrument; and if he is dead, an enquiry should be made of such persons as must be presumed to have it in their possession." In this case, there is nothing to show that Woods is not alive. And, besides, the affidavit of a party on the question of the loss of a paper, should exclude all presumption that he may have it in his own possession, or that he knows where it is. If it falls short of that, it is plainly and clearly insufficient.

It was farther contended, at the argument on behalf of the defendant, that the fair and legal inference to be made from the facts stated in the case, is, that the note was endorsed by Woods when he sold it to David P. Jones, and that, if such were the fact, this action could not be maintained, for that reason. But the case does not find, either expressly or by implication, that Woods endorsed the note. D. P. Jones testified, that he received the note of Woods in part payment of the price of a team which he sold to Woods, and

that he did not know whether Woods endorsed the note or not. The mere fact of the sale and delivery of the note by Woods to D. P. Jones, which is the only fact to which D. P. Jones testifies, does not furnish even *prima facie* evidence of the endorsement of the note. For aught that appears, it may or may not have been endorsed. Perhaps notes, thus sold, are more frequently endorsed by the payee, than otherwise. Still, in the course of business they are doubtless often sold, without endorsement. There is no such uniform usage of endorsing notes in every case of sale, that the mere fact of the sale and delivery will raise the legal presumption of endorsement also.

The result is, that in the opinion of this court, the court below erred, in ruling that the evidence offered by the plaintiff of the loss of the note declared on, was sufficient to warrant that conclusion, and in admitting other evidence of its contents.

The verdict must, therefore, be set aside, and the action be transferred to the court of common pleas, for trial.